IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| MOSHANNON VALLEY CITIZENS, INC. | CHAPTER 11 |
| t/a PHILIPSBURG AREA HOSPITAL, | |
|     Debtor | |
| | CASE NO. 1:06-bk-00095MDF |
| EXECUTIVE SOUNDING BOARD | |
| ASSOCIATES, | |
|     Movant | |
| v. | |
| MOSHANNON VALLEY CITIZENS, INC. | |
| t/a PHILIPSBURG AREA HOSPITAL, | |
| and OBERMAYER, REBMANN, | |
| MAXWELL & HIPPEL, LLP, | |
|     Respondents | |

## OPINION

This matter came before the Court on a Motion (hereinafter the "Motion") filed by Executive Sounding Board Associates ("ESBA") to enforce a compensation order previously entered in the bankruptcy case of Moshannon Valley Citizens, Inc. ("Moshannon"), and to obtain reimbursement of the fees and expenses that it incurred in filing the Motion. By Order entered on October 3, 2011, ESBA's request to enforce the compensation order was granted. The subject of this Opinion is whether ESBA is entitled to recover attorneys fees and expenses it incurred from the estate or through disgorgement of fees previously paid to Obermayer, Rebmann, Maxwell & Hippel, LLP ("Obermayer") as counsel for Moshannon.

### I. Background

ESBA is a business consulting firm located in Philadelphia, Pennsylvania. Obermayer is a law firm also located in Philadelphia. Prior to filing its bankruptcy petition, Moshannon was a non-profit corporation operating a twenty-five bed community hospital in Centre County,

Pennsylvania. Moshannon leased the facility from which it conducted its operations from the Commonwealth of Pennsylvania, Department of General Services ("DGS"). Shortly after it filed for bankruptcy, Moshannon closed the hospital and ceased all operations. Its only assets were its medical equipment, accounts receivable, and the DGS lease.

To facilitate the sale of its assets, Moshannon retained Obermayer in 2005, paying a retainer of $20,000. On January 25, 2006, Obermayer filed a Chapter 11 bankruptcy petition on Moshannon's behalf and filed an application for retention as debtor's counsel.

On March 10, 2006, Obermayer filed an application to employ ESBA to serve as Moshannon's financial advisor. Three days after the application was filed, ESBA sent a letter ("the Engagement Letter") to Moshannon setting forth the parties' understanding regarding the terms of ESBA's retention. Relevant to the instant proceeding, the Engagement Letter contained a provision stating that if a dispute should arise between Moshannon and ESBA relative to professional fees, ESBA would be entitled to payment of any attorneys' fees and costs expended to litigate the dispute if ESBA prevailed on the merits. On March 16, 2006, in response to an objection to the application filed by the United States Trustee, Obermayer filed a Supplement to the application to employ ESBA providing further detail regarding the services that ESBA would provide. The Supplement states that ESBA had agreed to be paid less than its customary billing rates and that it estimated total fees for the engagement of between $10,500 and $18,000. The application to employ ESBA was never amended to include the terms of the Engagement Letter. An order was entered approving the retention of ESBA on March 27, 2006.

Obermayer filed its First Application for Compensation and Reimbursement of Expenses (the "First Obermayer Application"), which covered the period between January 25, 2006 and

2

April 30, 2006 on June 6, 2006. Obermayer requested $122,395 in fees and $2503.16 for expenses, which was approved by the Court on August 1, 2006. Moshannon's August 2006 Monthly Operating Report reflects that it made payments to Obermayer totaling $104,898.16 on August 3, 2006. (Docket Item #412.)

On September 15, 2006, Obermayer filed an application for compensation on behalf of ESBA ("ESBA application") for services rendered and costs incurred between March 13 and June 30, 2006. The American Federation of State, County and Municipal Employees, District Council 83 ("AFSCME") filed an objection to the application insisting that ESBA was not entitled to payment for its services while the administrative claims of its members remained unpaid. On November 14, AFSCME withdrew its objection to ESBA's application based upon Obermayer's representation at an earlier hearing on July 31, 2006, that all administrative claimants who had received payment would disgorge funds received in the event that the estate was determined to be administratively insolvent.

On November 16, 2006, the Court approved the ESBA application by Order containing the following provisions: "compensation . . . is allowed and *shall be paid forthwith* to ESBA in the sum of $43,871.64" and "ESBA is allowed and *shall be paid* the sum of $1,285.02 as reimbursement of costs expended . . . ." (Compensation Order, Docket Item # 392.) (Emphasis added.) Despite the language of the Order, ESBA was not paid "forthwith"; it did not receive payment as required until October 2011. On several occasions in the interim period, ESBA contacted Obermayer to inquire as to when payment might be forthcoming. ESBA's inquiries

3

were repeatedly met with a representation that Moshannon did not possess sufficient funds to fulfill its obligation under the Order.[1]

In the course of Moshannon's bankruptcy case, Obermayer moved for approval of the transfer of the DGS lease and substantially all of Debtor's assets to a for-profit entity, Rosewood Real Estate, Inc. ("Rosewood"), pursuant to an auction sale in which Rosewood was determined to have submitted the winning bid. The transfer proved to be ill-advised. While Moshannon's bankruptcy case was pending, the sole principal of Rosewood, Larry Adams, M.D., came under criminal indictment on drug-related charges of which he was ultimately convicted in November 2008. Nonetheless, Obermayer pressed forward with the proposed transfer on Moshannon's behalf. Eventually, the transfer was approved, Moshannon's Plan was confirmed, and the bankruptcy case was closed. Not surprisingly, the sale was never consummated, and Moshannon filed suit against Rosewood for damages for breach of the sales agreement. Due to the failure of the sale proposed in the its original Plan, Moshannon was compelled to amend its plan or face dismissal of its case.

---

[1]Soon after Obermayer filed its first application for fees and expenses, but before ESBA's fee application was filed, several administrative claimants demanded immediate payment of their claims. On July 21, 2006, doctors employed by Moshannon filed a motion to compel payment of their administrative expenses for wages and tail insurance coverage in the amount of $108,761.50. The Official Committee of Unsecured Creditors (the "Committee") objected arguing that administrative claims should be paid through the plan. On August 8, 2006, AFSCME filed a motion for allowance and immediate payment of an administrative claim of $856,636.08. Moshannon and the Committee objected to the motion. On August 16, 2006, McKesson Automation, Inc. filed a motion demanding allowance and payment of its administrative claim of $28,680. On August 17, 2006, the Court entered an order allowing the claim of Beckman Coulter, Inc. ("Beckman") of $13, 231.61 and requiring immediate payment. Beckman and Debtor subsequently entered into a stipulation in which Beckman agreed to be paid at the same time as other administrative claims under the terms of Moshannon's plan.

4

Moshannon's First Amended Disclosure Statement ("Amended Disclosure Statement") and First Amended Reorganization Plan ("Amended Plan") were filed on April 8, 2011, calling for payment of creditors' claims from the proceeds, if any, of the Rosewood litigation, along with the proceeds of the sale of certain remaining medical equipment. Obermayer did not serve ESBA with the Amended Disclosure Statement and Amended Plan or provide notice that they had been filed. The Amended Plan provided that administrative claimants (including ESBA) would receive a "pro rata share, up to 100%, of the amount of [its] Allowed Claim" within sixty days of the effective date of the Amended Plan. The Amended Plan further allowed for "such other treatment [of an administrative claim] as may be agreed upon" between the parties or otherwise ordered by the court. (Amended Plan, Docket Item #732, § 4.1(d).) On August 3, 2011, the Court entered an Order confirming the Amended Plan. To date, no funds have been distributed under its terms.

Having failed to receive payment of its fees and expenses, on August 19, 2011, ESBA filed the Motion seeking to enforce the Compensation Order. In its brief, ESBA asserts that on September 27, 2011, Obermayer contacted ESBA and offered to pay the fees required by the Compensation Order, but refused to pay damages asserted by ESBA or to disgorge fees that it had received.[2] ESBA rejected Debtor's offer, and Debtor filed an Objection to ESBA's Motion

---

[2] Although Rule 408 of the Federal Rules of Evidence ordinarily precludes offers of settlement and terms of settlement negotiations from consideration by a trier of fact, it allows the admission of such evidence for purposes other than proving "the validity or amount of a disputed claim." Fed. R. Evid. 408(a). In this case, the parties do not dispute that an offer of settlement was made. Further, Obermayer did not object to ESBA's inclusion of this information in its brief. *See In re Groggel*, 333 B.R. 261 (Bankr. W.D. Pa. 2005) (noting that Rule 408 preclusions can be waived). I accept ESBA's statement regarding the settlement offer not for any purpose related to the amount of the claim, but, as indicated above and more fully discussed below, to show that an offer of settlement was made.

5

on September 30, 2011. A hearing was held on October 3, 2011, after which I issued an Order requiring Moshannon to fulfill within seven days its payment obligation to ESBA under the Compensation Order. I reserved ruling on the issue of whether ESBA is entitled to reimbursement for the legal fees and expenses it incurred in filing its Motion for enforcement. The parties have filed briefs on that issue, and it is ready for decision.[3]

## II. Discussion

ESBA bases its claim for reimbursement of legal fees and expenses incurred pursuing enforcement of the Compensation Order on four theories. First, ESBA asserts that the fees and expenses it incurred were "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Second, ESBA asserts, alternatively, that even if its fees and expenses were not intended to preserve the estate, the "fundamental fairness" doctrine enunciated in *Reading Co. v. Brown*, 391 U.S. 471 (1968) supports an award of ESBA's fees and expenses. Third, ESBA asserts that, under 11 U.S. C § 105(a), its fees and expenses should be allow as a penalty for contempt against Obermayer for the firm's lack of disinterestedness. Finally, ESBA argues that it is "contractually entitled" to fees and expenses incurred in connection with the within Motion based on the terms of the Engagement Letter.

  A.  *ESBA's administrative claim*

Professionals retained by a Chapter 11 debtor to render post-petition services are compensated under 11 U.S.C. § 503(b)(2), which allows for "compensation and reimbursement

---

[3]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (B), and (O). This Opinion constitutes findings of fact and conclusions of law required to be made by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

awarded under section 330(a)." Section 330(a) provides that a professional may receive reasonable compensation for actual, necessary services and reimbursement for actual, necessary expenses so long as they were "necessary to the administration of" or "beneficial toward the completion of" the bankruptcy case. 11 U.S.C. § 330(a)(1) and (3). A professional retained by the estate under 11 U.S.C. § 327 is paid under the standards of § 330 and according to the authority of § 502(b)(2). In the matter before this Court, ESBA is not requesting compensation for its services under § 330. Rather, ESBA is seeking reimbursement for fees and expenses it incurred while pursuing its rights to compensation under § 330.

A prevailing party is not entitled to attorneys fees except under certain limited circumstances. This principal is referred to as the "American Rule." *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975). The rule is based on the premise that parties should be afforded liberal access to the courts. Allowing participation with the prospect that the loser may be required to pay the entire cost of litigation has a chilling effect on such access. *Fleischmann Distill. Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718 (1967). The American Rule has been extended to litigation conducted in bankruptcy court. *In re S.S.,* 271 B.R. 240, 244-45 (Bankr. D. N.J. 2002) (citing *In re Fox,* 725 F.2d 661, 662 (11th Cir. 1984)). An exception to the American Rule is recognized in federal courts where a party is found to be in "willful disobedience of a court order." *Alyeska*, 421 U.S. at 258.

*B. Requirement that expenses provide actual benefit and preserve value*

ESBA argues that it is entitled to be compensated for the expenses it incurred to obtain payment for the services it rendered to the estate. Section 503(b)(1)(A) provides that administrative expenses may be allowed for "actual, necessary expenses of preserving the

7

Case 1:06-bk-00095-MDF    Doc 792    Filed 04/24/12    Entered 04/24/12 14:07:37    Desc
Main Document      Page 7 of 14

estate. . . ." An administrative claimant must satisfy "the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1990) (citations omitted). ESBA argues that its services conferred an actual benefit on the estate. Although not disputed, this assertion is irrelevant to the matter before the Court. ESBA's services are not at issue – the fees and expenses it incurred enforcing the Compensation Order provide the basis for its claim.

Courts generally refuse to include attorney fees incurred pursuing collection of an administrative expense as part of the allowed administrative expense claim because the services were not incurred to preserve the estate. *In re Juvennelliano*, 464 B.R. 651, 655 (Bankr. D. Del. 2011); *In re Enderle*, 352 B.R. 444, 447 (Bankr. E.D. Mich. 2006); *In re Sports Shinko (Florida) Co., Ltd.,* 333 B.R. 483, 499 (Bankr. M.D. Fla. 2005). These issues generally arise in the context of estate creditors seeking reimbursement of legal fees, however, there is no basis upon which estate professionals would be excepted from this requirement. ESBA has failed to establish that the fees and expenses it incurred collecting its professional fees were necessary to preserve the value of estate. Therefore, ESBA's request for an administrative expense priority claim under § 503(b)(1)(A) will be denied.

### B. The "Fundamental Fairness" Doctrine

ESBA asserts that even if the Court does not find that the attorneys fees and expenses it incurred pursuing collection of its administrative claim benefitted the estate, it is still entitled to be compensated for those expenses. In *Reading Co. v. Brown,* 391 U.S. 471 (1968), the United States Supreme Court recognized a limited exception to the requirement that an administrative

8

Case 1:06-bk-00095-MDF    Doc 792    Filed 04/24/12    Entered 04/24/12 14:07:37    Desc
Main Document      Page 8 of 14

claimant show that an expense incurred benefitted the estate. In *Reading*, tort claimants sustained damages in a post-petition fire caused by a receiver's negligence.[4] The Court held that although the damage claim did not "benefit" or "preserve" the estate, equitable principles of "fairness to all persons having claims against the insolvent" demanded that innocent third parties should recover their damages ahead of creditors for whose benefit the business was being operated. *Id*. at 482–83. Accordingly, the holding in *Reading* established an exception to the general rule that to be compensable, expenses incurred must benefit the estate.[5]

ESBA cites several cases in which litigation costs were allowed as administrative claims under the *Reading* doctrine because the claimants had been forced to litigate to obtain damages for injuries suffered attributable to a debtor's post-petition acts. *See e.g. Spunt v. Charlesbank Laundry, Inc.*, 755 F.2d 200 (1st Cir. 1985) (post-petition legal fees incurred by plaintiffs compelled to enforce injunction against debtor in state court were allowable as administrative expense under § 503(b)(1)(A)). Courts also have granted administrative priority to claims that promote the goal of environmental protection. *See Alabama Surface Mining Comm. v. C. Michael Stilson (In re N.P. Mining Co., Inc.)*, 963 F.2d 1449, 1457-59 (11th Cir. 1992) *cited in In re Old Carco LLC*, 424 B.R. 650, 658 (Bankr. S.D. N.Y. 2010). In this latter group of cases public health and safety concerns trumped the interests of general creditors. "[T]he reasoning of the *Reading* line of cases has been applied in the context of a debtor's negligence, a debtor's

---

[4]In the parlance of the 1898 Bankruptcy Act, a trustee was known as a "receiver."

[5]In *dicta,* the Third Circuit recognized that *Reading* continues to apply under the Bankruptcy Code. *In re Women First Healthcare, Inc.*, 332 B.R. 115, 123 (Bankr. D. Del. 2005) (citing *Pennsylvania Dept. of Envtl. Res. v. Tri-State Clinical Lab.*, 178 F.3d 685 (3d Cir. 1999) ("Courts have applied *Reading* even when there is no discernible benefit to the debtor estate if fundamental fairness requires that the claimant's rights take precedence over others.")

9

intentional misconduct, or injury to an innocent third party with no prior relationship to the debtor." *In re Old Carco LLC*, 424 B.R. at 660.

In the within case, the same issues of fundamental fairness do not exist. ESBA acknowledged that although the Compensation Order was not satisfied promptly, Obermayer offered to fulfill Moshannon's obligation in September 2011, before Moshannon filed an objection to ESBA's motion or the hearing was held. Although Obermayer's treatment of ESBA demonstrates an appalling lack of professional courtesy, ESBA has failed to demonstrate that the fees and expenses it incurred were attributable to Moshannon's negligence or Moshannon's intentional misconduct. Further, ESBA is not the kind of innocent third party with no prior relationship to Moshannon that the *Reading* doctrine was intended to protect. As its financial advisor, ESBA was aware when it was retained that Moshannon's financial situation was precarious and that it might not be fully compensated for it services.

*C. Civil contempt damages*

"Civil contempt . . . seeks only to coerce the defendant to do what a court had previously ordered him to do. Once a civil contemnor complies with the underlying order, he is purged of the contempt and is free. [H]e carries the keys of his prison in his own pockets." *Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011) (citations and internal quotations omitted). In the matter before me, ESBA admits that Moshannon has fulfilled its obligation to comply with the Compensation Order. Therefore, under *Turner*, civil contempt damages may not be imposed at this juncture.

Even if Moshannon had not yet paid ESBA according to the Compensation Order, civil contempt damages would not be appropriate. "Civil contempt sanctions may be granted when

10

three elements have been established: (1) a valid order has been entered; (2) the person to be charged with contempt has actual knowledge of the order; and (3) the person has disobeyed the order." *In re Foltz,* 324 B.R. 250, 253 (Bankr. M.D. Pa. 2005) (citing *In re Continental Airlines, Inc.,* 236 B.R. 318, 330 (Bankr. D. Del. 1999)). The violation of the order must have been "knowing and willful." *In re Continental*, 236 B.R. at 331 (citing *In re Ryan*, 100 B.R. 411, 417 (Bankr. N.D. Ill. 1989)). *See also In re Kewanee Boiler Corp.*, 297 B.R. 720 (Bankr. N.D. Ill. 2003) (movant has burden to show that respondent acted "intentionally with knowledge that [its] act was in violation of the [order].").

"[A] finding of willfulness is inappropriate where a litigant's violation of a[n] order is caused by simple negligence, misunderstanding, or inability to comply." *In re Southeast Banking Corp.*, 204 F.3d 1322, 1332 (11th Cir. 2000) (citations omitted). "A court may not impose punishment in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." *Turner*, 131 S. Ct. at 2516.

In the matter before me, ESBA produced no evidence that its failure to receive payment was a result of an intentional decision by Obermayer to withhold payment, followed by a continuing resolution to withhold it for an indefinite period. The docket of the bankruptcy case – including the voluminous pleadings filed in connection with the aborted Rosewood sale – makes it abundantly clear that Moshannon's liquid assets were minimal and that the claims against these assets were significant. While Moshannon may have had enough funds on hand to pay ESBA, the funds were clearly inadequate to pay all administrative creditors in full. Therefore, I conclude that ESBA failed to sustain its burden of proving that either Moshannon or Obermayer acted willfully in failing to abide the terms of the Compensation Order.

11

As a corollary to its argument that Obermayer should be subject to a citation for contempt, ESBA argues that fees previously paid on the First Obermayer Application should be considered excessive because Obermayer engaged in "unethical conduct." Here ESBA is not arguing that its claims are entitled to administrative priority because it was treated unfairly, but that Obermayer should be required to disgorge funds to the estate. In support of the request for disgorgement, ESBA asserts that Obermayer failed to ensure that Moshannon satisfied the Compensation Order because the firm was "motivated by a self-interested desire to preserve the estate's assets for its own future services, rather than using the available funds to pay for services that ESBA had already performed . . . ." (Motion, ¶ 27.) ESBA also accuses Obermayer of unethical conduct by repeatedly misrepresenting that Moshannon did not have sufficient funds to pay ESBA's administrative claim.

ESBA is correct that a debtor's counsel may be required to disgorge fees if it is determined that counsel engaged in unethical conduct. *See In re Martin*, 197 B.R. 120, 125 (Bankr. D. Colo. 1996). However, ESBA has failed to establish that Obermayer's conduct supports this serious sanction. While it may be true that Obermayer was motivated to preserve Moshannon's dwindling cash resources to ensure future payment of its own fees, as stated previously, there were numerous other administrative creditors also demanding payment. As early as July 31, 2006, Obermayer was representing that funds received by administrative creditors would have to be disgorged in the event that the estate was determined to be administratively insolvent. Further, Obermayer has continued to provide legal services to Moshannon with the payment of its fees contingent upon the successful resolution of the suit it is

12

pressing against Rosewood.[6] Obermayer's failure to provide notice to ESBA of the filing of the Amended Disclosure Statement and Amended Plan and to ensure the payment of Compensation Order demonstrate a disappointing lack of professionalism by Obermayer. However, I do not find that it is appropriate to characterize Obermayer's conduct as unethical.

   D. *Contractual Right*

The employment of a professional by a debtor-in-possession is governed by the terms of 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014, which require the filing of an application for employment and an opportunity for creditors to object prior to the entry of an Order to approve employment. Rule 2014(a) specifically requires that a retention application "shall state . . . any proposed arrangement for compensation."

In the matter before me, ESBA asserts that the Engagement Letter entitles it to reimbursement of its litigation fees. However, the Engagement Letter was not part of the retention application filed on ESBA's behalf. Indeed, the letter was not even sent to Moshannon until two days *after* the application was filed.

The Engagement Letter was not available for review by the Court or the United States Trustee before the order was entered approving ESBA's employment. Although it is evident that ESBA intended for the Engagement Letter to govern its relationship with Moshannon, it would undermine the purpose of Rule 2014 and penalize other administrative claimants and creditors of the estate if the terms of this agreement were enforced and ESBA were permitted to recover not

---

[6]Obermayer has pending a second application for compensation filed on October 11, 2009 for the period May 1, 2006 through September 30, 2007, which includes a request for fees in the amount of $285,668 and expenses in the amount of $15,953. Objections to this application filed by the United States Trustee have not been resolved.

only its fees for services rendered to the estate, but also its counsel fees.

### III. Conclusion

The record before me provides insufficient grounds for the imposition of sanctions or for the assessment ESBA's litigation costs against Moshannon or Obermayer. The expenses claimed by ESBA do not qualify as administrative claims under 11 U.S.C. § 503(b)(1)(A) and do not meet the requirements for payment under the principal of fundamental fairness set forth in *Reading Co. v. Brown*. ESBA's claim for attorneys fees under the terms of the Engagement Letter also must be rejected as this agreement was not part of the retention agreement presented to the Court for approval. Although I find that Obermayer failed to comply with the highest professional standards in its relationship with ESBA, these deficiencies do not justify a finding of contempt. Therefore, ESBA's Motion to Enforce Compensation Order and for Reimbursement and Disgorgement will be denied to the extent that it requests reimbursement of counsel fees and costs.

An appropriate order will be entered.

By the Court,

Mary D. France
Chief Bankruptcy Judge
(JK)

Date: April 24, 2012

14